UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| DOUGLAS PRICE GERALD<br>    **Plaintiff,**<br><br>V.<br><br>COMMISSIONER OF SOCIAL SECURITY<br>    **Defendants.** | CIVIL ACTION NO. 5:16-cv-266-KKC<br><br><u>**OPINION AND ORDER**</u> |

*** *** ***

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Douglas Price Gerald and Defendant Commissioner of Social Security. (DE 13 & 16). Gerald brought this action under Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under Titles II and XVI of the Social Security Act ("the Act"). The Court, having reviewed the record, will reverse the Commissioner's decision and remand this matter for further proceedings consistent with this opinion.

———————

### I. OVERVIEW OF THE PROCESS

To determine whether a claimant has a compensable disability under the Social Security Act, the administrative law judge ("ALJ") applies a five-step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 81 F.3d 825, 835 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps, in summary, are:

> *Step 1:* If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> *Step 2:* If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> *Step 3:* If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.
>
> *Step 4:* If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> *Step 5:* If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process the claimant bears the burden of proof. *Sorrell*, 656 Fed. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (internal citations omitted); 20 C.F.R. § 404.1520(g)(1).

## II. FACTUAL AND PROCEDURAL BACKGROUND

A. <u>Factual Background</u>

Douglas Gerald was born in 1957. (Administrative Record ("AR") 54). He is divorced and does not have any minor children. (AR 31). He completed three years of college but did not obtain a postsecondary degree. (AR 32). Gerald served in the U.S. Navy for three years. (AR

33, 45). Before he allegedly became disabled, Gerald worked as a pari-mutuel clerk, material handler and forklift operator, and tree trimmer. (Ar. 50).[1] His last date of reported work was June 17, 2012. (AR 178).

Gerald applied for Disability Insurance Benefits on December 30 2013 and Supplemental Security Income Benefits on January 23, 2014, alleging that he became disabled on June 26, 2011 (AR 178, 182, 204). In his benefits application, Gerald claimed he was unable to work due to a combination of impairments, which included borderline diabetes, attention-deficit/hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), swelling of the feet and right leg, degenerative disc disease, morbid obesity, and multiple mental disorders. (AR 202). Gerald's application was denied initially and on reconsideration. (AR. 54, 64, 79, 93). Gerald then filed a timely request for a hearing before an ALJ. (AR 130-131).

A hearing was conducted by ALJ Ronald Kayser in Lexington, Kentucky on December 18, 2016. Gerald attended the hearing, accompanied by his attorney, and testified on his own behalf. Betty Hale, an impartial vocational expert, also appeared and testified. (AR 27, 29, 31, 47). After the hearing, the ALJ issued a written opinion on January 15, 2016 denying Gerald benefits. (Tr. 16-26). Gerald now appeals that decision to this Court.

B.  The Administrative Decision

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, *see* 20 C.F.R. § 404.1520, and found that Gerald's claim failed at step five. At step one, the ALJ found that Gerald had not engaged in substantial gainful activity since June 26, 2011, the alleged disability onset date. (AR 18). At step two, the ALJ found that Gerald suffered from four severe impairments: (1) depression, (2) history of substance abuse, (3) obesity, and (4) osteoarthritis/degenerative joint disease. At step three, the ALJ

---

[1] Gerald also worked as a cable splicer and watchman, but because these jobs were part time they were not considered as part of his past relevant work.

determined that Gerald's severe impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 4040, Subpart P, App. 1. (AR 21).[2] Before reaching step four, the ALJ determined Gerald's residual functional capacity (RFC). The ALJ found that Gerald retained, based on all of his impairments, the RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can frequently climb ramps/stairs, but occasionally climb ropes, ladders and scaffolds; frequently balance, stoop, kneel, crouch and crawl. The claimant can understand, carry out, and remember simple instructions; make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; respond appropriately to supervision, co-workers and work situations; deal with changes in routine work-setting.

(AR 23). Moving to step four, the ALJ accepted the testimony of the vocational expert and found that Gerald was unable to perform past relevant work. (AR 24). At step five, the ALJ considered Gerald's RFC, age, education, and work experience and the Medical-Vocational Guidelines in 20 C.F.R. Part 4040, Subpart P, App. 2 and found that there were significant numbers of jobs in the national economy that Gerald could perform. More specifically, the ALJ found, based on the vocational expert's testimony, that Gerald could work in an occupation such as hand packing or cleaning. (AR 25). Accordingly, the ALJ concluded that Gerald was not disabled from June 26, 2011 through January 15, 2016, the date of the written decision. (AR 26).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council subsequently denied Gerald's request for review on May 24, 2016. (AR 1-5); *see* 20 C.F.R. § 422.210(a). Gerald has exhausted his administrative remedies and filed a timely appeal in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

---

[2] The SSA modified the listing criteria for mental disorders in January 2017. All subsequent citations to 20 C.F.R. Pt. 404, Subpart. P, App. 1 refer to the version of the regulation in effect at the time of Gerald's SSA-benefits application and the ALJ's decision.

**III. STANDARD OF REVIEW**

Under the Social Security Act, the Court conducts a limited review of the Commissioner's decision. 42 U.S.C. § 405(g). The Court may only evaluate whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record. *Id.*; *see also Rabbers*, 582 F.3d at 651. Substantial evidence means "more than a scintilla of evidence but less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). In assessing the ALJ's decision, the Court cannot "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Id.*; *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

**IV. ANALYSIS**

Gerald challenges the ALJ's assessment of his RFC prior to step four. He alleges two errors. First, the ALJ failed to give good reasons for discounting the opinion of his treating physicians. Second, the ALJ erred by failing to consider the nature and extent of Gerald's treatment for his physical and mental impairments on his ability to work. These arguments and there subparts are addressed in turn.

*A. Whether the ALJ failed to give good reasons for discounting treating source opinions*

Plaintiff first argues that the ALJ erred in failing to give good reasons for discounting the opinions of his treating psychologist and physician, Drs. Cabezas and Hughes, respectively, in assessing his RFC. (DE 14 at 5-8). Dr. Craig Cabezas completed a mental capacity assessment on July 9, 2015 for Gerald's depressive disorder. Dr. Cabezas found that Gerald

had moderate and marked limitations in areas related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (AR 1598-99). Dr. Cabezas also noted that Gerald had long-standing psychiatric problems associated with his severe clinical depression. (AR 1599). Dr. Hughes issued an opinion on July 31, 2015 concluding that Gerald suffered from hypertension, deep vein thrombosis (DVT) of the right lower extremity, depression, anxiety, and PTSD. Dr. Hughes completed his own RFC assessment that found Gerald to be more limited than the ALJ's subsequent RFC.[3] The ALJ, however, accorded these opinions "little weight due to inconsistencies with the treatment record and the claimant's activities." (AR 24). Gerald asserts that if all or parts of Dr. Hughes and Dr. Cabezas's opinions were credited by the ALJ in his RFC, a finding of disabled would be required. (DE 14 at 4-5).

The Social Security regulations recognize three types of medical sources: nonexamining sources, nontreating (but examining) sources, and treating sources. 20 C.F.R. § 404.1527; *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Under the "Treating-Source Rule," the opinion of a treating physician is generally entitled to the most weight. *See Reeves v. Comm'r of Soc. Sec.*, 618 Fed. App'x. 267, 273 (6th Cir. 2015) If the ALJ finds that the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is given controlling weight. 20 C.F.R. 404.1527(c)(1). If the ALJ chooses to discount a treating source's opinion, "the ALJ is procedurally required to give 'good reasons' for

---

[3] Dr. Hughes' RFC found that Gerald could walk half a city block without rest or severe pain, that he could sit ten minutes at a time and stand five minutes at a time, was able to sit and stand/walk for less than two hours each in an eight-hour work day, would need to take unscheduled breaks every hour for thirty minutes, could occasionally lift up to twenty pounds, was impaired in his ability to twist, stoop, crouch, and climb stairs and ladders. (AR 1604-05). Dr. Hughes also stated that Gerald's impairments would cause him to miss more than four days of work per month and that his chronic anxiety, depression, and PTSD would further affect his employability. (AR 1605).

discounting treating physicians' opinions, which are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Reeves*, 618 Fed. App'x. at 273 (citing *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)).

The ALJ discounted the opinions of Dr. Cabezas and Hughes because he found their opinions were "inconsisten[t] with the treatment record and the claimant's activities." (AR 24). For the reasons discussed below, the Court finds that the ALJ gave good reasons for discounting the opinion of Dr. Hughes but failed to give good reasons for discounting the opinion of Dr. Cabezas.

1. *The ALJ gave good reasons for discounting the opinion of Dr. Hughes*

Inconsistencies with the treatment record and Gerald's activities were good reasons for discounting the opinion of Dr. Hughes. In his written opinion, the ALJ acknowledged that Dr. Hughes stated in his July 31, 2015 medical statement that Gerald had "hypertension, DVT of the right lower extremity, depression, anxiety and posttraumatic stress disorder. He can stand/walk and sit for less than 2 hours each." (AR 20). The ALJ, however, found that Dr. Hughes's July 2015 medical opinion was inconsistent with his own subsequent progress notes. For instance, in progress notes dated November 13, 2015, Dr. Hughes noted that Gerald had lower back pain, but no secondary limitations, his extremities were negative for clubbing and cyanosis, strength was normal, coordination and sensory function intact, he could ambulate without assistance and his psychiatric exam was unremarkable.[4] (AR 20). Inconsistences within treatment records are good reasons to find the opinion of a treating physician is entitled to less weight. 20 C.F.R. § 404.1527(c)(3) (" The more a medical source

---

[4] The Court finds that Dr. Hughes progress notes, which state that Gerald's psychiatric exam was unremarkable, is relevant to discounting the opinion of Dr. Hughes because it is an inconsistency within his own treatment records. The finding, as discussed below, is less probative as to the weight that should be given to Dr. Cabezas, who unlike Dr. Hughes is a specialist in mental health issues. *See* 20 C.F.R. § 404.1527(c)(5).

presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-113 (6th Cir. 2010) (finding good reasons for giving little weight to treating source's opinion where "the objective evidence and [the treating source's] treatment notes do not support the limitations he reported.") (internal citations omitted). The ALJ's finding that Dr. Hughes's opinion was inconsistent with Gerald's daily activities also constituted good reasons for discounting the opinion. *See* 20 C.F.R. § 404.1527(c)(4) ("[T]he more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). As the ALJ noted, Dr. Hughes did not report significant limitations in personal care. While he claimed to use a cane daily and required a knee brace, progress notes from Dr. Hughes stated he ambulated without assistance and did not indicate he required a knee brace. Moreover, Gerald was able to prepare simple meals, do laundry, load the dishwasher, go out daily, and drive his car. (AR 24). This was inconsistent with Dr. Hughes's finding that Gerald was limited to standing and walking less than two hours a day.

Gerald claims that the ALJ improperly ignored Gerald's hospitalization for cellulitis on his left leg and right leg pain and swelling in July 2014, an emergency room visit for back pain and lower extremity swelling in November 2014, and Dr. Hughes's notes regarding bilateral lower extremity pedal edema in November 2014. But these records relate to conditions not described in Dr. Hughes's July 31, 2015 medical source statement. Moreover, the question before the Court is not whether other record evidence supports Dr. Hughes's opinion, but whether there is substantial evidence to support giving his opinion little weight. *See Dyer v. Soc. Sec. Admin*, 568 F. App'x 422, 428 (6th Cir. 2014) ("Substantial evidence supports the administrative law judge's finding that [the treating source's] proposed severe limitations were inconsistent with the evidence in the record and the treating physician rule

was not violated."). Accordingly, the ALJ did not err in discounting the opinion of Dr. Hughes and gave good reasons for the weight he gave the opinion.

 2. *The ALJ failed to give good reasons for discounting the opinion of Dr. Cabezas*

In discounting the opinion of Dr. Cabezas, the ALJ also relied on inconsistencies with the treatment record and Gerald's activities. These inconsistencies, however, were not good reasons for discounting the opinion of Dr. Cabezas. In his July 9, 2015 opinion, Dr. Cabezas found that Gerald suffered from depressive disorder and that his Beck Depression Inventory – 2 indicated marked impairments in comprehension, following instructions, concentration, and response to authority. Moreover, Dr. Cabezas found that Gerald had marked limitations in his ability to maintain attention and concentration for extended periods. (AR 20). The ALJ noted a number of supposed inconsistencies in the record which justified discounting the opinion of Dr. Cabezas. For the reasons below, however, these inconsistencies were not good reasons for discounting the opinion of Dr. Cabezas.

The primary inconsistency that the ALJ relied was a progress note dated November 13, 2015 from Dr. Hughes, which stated that Gerald's valium was being stopped and he was instead beginning to use pain medication. The note also stated that Gerald's psychiatric exam was negative for moodiness, depression, and anxiety. (AR 20, 24). Dr. Hughes's single progress note was not a good reason for discounting the opinion of Dr. Cabezas. First, Dr. Cabezas is a psychologist while Dr. Hughes was merely Gerald's primary care physician. The Commissioner is generally required to give more weight to the opinion of a specialist such as Dr. Cabezas than to a non-specialist. 20 C.F.R. § 404.1527(c)(5) (We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). Second, as the extensive treatment record shows, Dr. Cabezas, as Gerald's treating clinical psychologist, had

more knowledge of Gerald's mental limitations than Dr. Hughes. (AR 270-448); 20 C.F.R. § 404.1527(c)(2)(ii) ("[T]he more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion."). None of the factors listed in 20 C.F.R. § 404.1527(c) justify discounting the opinion of a specialist with an extensive treatment relationship based upon a single not by a primary care physician.

The ALJ also noted that Gerald had "not been sent for any psychiatric treatment or hospitalization." (AR 20). This is misleading. Gerald underwent psychiatric treatment that included psychiatric medication and psychotherapy. (AR 337, 415, 1515, 1648). The record also shows that Gerald was hospitalized four times for his psychiatric disorders. (AR 297-304, 534-42, 1578-82). The Commissioner argues that the ALJ was correct to discount the opinion of Dr. Cabezas because Gerald was never *referred* to a psychiatrist or psychiatric hospital by Dr. Cabezas or Dr. Hughes, noting that all of the hospitalizations were voluntary except one that followed the insistence of his optometrist. (AR 298-307, 537-43). That these hospitalizations were voluntary rather than referrals, however, is not a good reason for discounting his opinion. There was no evidence on record that these hospitalizations were unnecessary. Therefore, it was incorrect to state that the lack of involuntary psychiatric hospitalizations was a good reason for discounting Dr. Cabezas's opinion.

The ALJ also relied on inconsistencies between Dr. Cabezas's opinion and Gerald's daily activities in discounting Dr. Cabezas's opinion. The record evidence, however, shows that Gerald's mental limitations have a significant effect on his daily activities. While Gerald is occasionally able to engage in social activities, he has a long documented history of tumultuous relationships that resulted in emergency treatment for suicidal and homicidal ideation. (AR 299) (reporting to Dr. Cabezas a physical altercation between him and his son that resulted in thoughts of self-harm and harm to others); (AR 829) (reporting to Dr. Cabezas that his "friend that is a small coconut with a face on it . . . clams him down and helps alleviate

his suicidal and at times homicidal thoughts."). Accordingly, the ALJ's decision to discount the opinion of Dr. Cabezas was not supported by substantial evidence and not based on good reasons.

B. *The ALJ erred by failing to consider Gerald's treatment history*

Gerald's second claim of error is that the ALJ failed to consider the nature and extent of his frequent and extensive treatment on his ability to work. At his hearing, Gerald stated that he attended group therapy at the VA three to five days a week for his depression, anxiety, and anger issues. (AR 38). The record shows that Gerald has attended 205 group and peer therapy sessions as part of his psychiatric treatment between December 27, 2013 and November 17, 2015. (*See* DE 14-1, at 10-11). Moreover, as discussed above, Gerald was hospitalized four times for his psychiatric disorders. In assessing a claimant's RFC, the ALJ is instructed to consider "all of the relevant medical and other evidence" of an individual's ability to perform work-related activities." 20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8 clearly requires ALJ's to consider "the effects of treatment, including limitations imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." SSR 96-8P (S.S.A.), 1196 WL 374184, at *5. Despite this policy interpretation, the ALJ ignored Gerald's hospitalizations because they were not the result of referrals and discounted his psychiatric treatment because it was group therapy. The ALJ did not discuss the frequency of Gerald's treatment and if it would interfere with his ability to work. Accordingly, the Court finds that the ALJ erred by failing to consider the record evidence of Gerald's hospitalizations and group therapy.

## V. CONCLUSION

For the reasons set forth above, the Court herby **ORDERS** as follows:

1. Plaintiff's motion for summary judgement (DE 13) is **GRANTED** to the extent that the plaintiff requests that this matter be **REMANDED** to the Commissioner;

2. The Commissioner's motion for summary judgement (DE 16) is **DENIED;**

3. The decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and this matter is **REMANDED** to the Commissioner; and

4. A judgement consistent with this Opinion & Order will be entered contemporaneously.

Dated November 29, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY